State of Iowa v. Pratt.

## STATE OF IOWA v. PRATT.

1. **Practice:** CRIMINAL CAUSES ON APPEAL. No assignment of error or joinder therein is necessary in a criminal case under our statute. Even when the defendant does not appear it is the duty of the Supreme Court to examine the record, disregarding technical errors and defects which do not affect the substantial rights of the parties, and render such judgment as the law demands.

2. **Criminal law:** LARCENY. To sustain an indictment for larceny of money it is not necessary to show that it was taken from the person of the owner. If it was dropped from the pocket of the owner and picked up by the defendant and converted to his own use, without the knowledge of the owner, the facts would sustain an indictment for the general offense of larceny.

3. —— PROOF OF GENUINENESS. After the State has, on the trial of such an indictment, proved the loss of the money, corresponding with that charged, and its value (equivalent to the denomination of the several bills) the prisoner is not entitled to an acquittal upon the ground that there was no proof of the genuineness of said bills. The presumption is that they were genuine.

4. **Practice:** OBJECTION TO EVIDENCE. Objection to evidence should be made when it is offered and not by instructions to the jury.

5. **Evidence:** CONVERSATIONS. It is competent on the trial of a criminal cause to show that the defendant when arrested was charged with the commission of the offense charged, and that he was silent. While the character of proof is often entitled to but little weight, its weight must be determined by the jury.

**Criminal law:** CASE FOLLOWED. The case of *The State of Iowa* v. *Collins, ante,* followed.

*Appeal from Bremer District Court.*

FRIDAY, APRIL 13.

LARCENY.—Defendant was convicted, sentenced to the penitentiary for two years and six months, and, to reverse this conviction, prosecutes this appeal.

*F. E. Bissell*, Attorney-General, for the State.

No appearance for the defendant.

WRIGHT, J. — No assignment of error or joinder therein is necessary in a criminal case, under our statute. And, though the defendant does not appear, or may fail to file the transcript, the State may file the same, and it is our duty to examine the record, and disregarding technical errors and defects, which do not affect the substantial rights of the parties, render such judgment as the law demands. In pursuance of these requirements, we have carefully examined this record, and proceed to state our views of the points made and saved in the court below.

1. PRAC-
TICE: crim-
inal law on
appeal.

As the testimony is not shown to be all before us, we have no means of knowing whether it did or not warrant the verdict. We can only presume that it did.

It seems that the property stolen consisted of United States currency or "greenbacks" and postal currency, belonging to one Dunn; that Dunn had it in his pocket-book in a side pocket, and that it was either taken therefrom or dropped out and was picked up, as the State claims, by the defendant. If the defendant picked it up, and with an unlawful intent converted it to his own use, without the knowledge of the owner, it would be as much larceny or a felonious taking as though he had

2. CRIMINAL
LAW: lar-
ceny.

taken it from the pocket./ And these facts, if shown, would sustain an indictment for the general offense of larceny. It is sufficient to charge the taking generally, for the statute makes such unlawful appropriation larceny, and punishes the offender accordingly.

The indictment in this case does not charge that the money was taken from the *person* of Dunn (Rev., § 4240), and as a consequence the State was not required to make any such proof.

After the State had proved the loss of the money corresponding with that charged and its value (equivalent to the denominations of the several bills), the prisoner could not ask an acquittal upon the ground that there was no proof of the genuineness of said bills. There was no suggestion or proof, so far as shown by the record, tending to show that the bills were counterfeited. Their amount and value being shown, it will not be presumed that they were not genuine. Whart. Cr. L., 645.

3. —proof: genuineness.

It seems that there was testimony tending to show that the prisoner, when arrested, was charged with the theft and made no reply. To this proof there was no objection at the time; but an instruction was asked to the effect that such testimony "could not be used against him. This was refused, and very properly. The objection could not regularly nor properly be raised in this manner nor at this stage of the proceedings. Then, again, while this character of proof is often entitled to but little weight, there is no rule justifying its entire exclusion. Its value is to be determined by all the circumstances, of which the jury are the peculiar judges. One person may be so confused or embarrassed, so completely taken by surprise by the unexpected and sudden arrest and charge, as, though ever so innocent, to act in a manner strongly indicative of guilt. And yet, another man, cool and self-possessed, may be able

at once to command the entire situation, and though the most hardened villain, disarm suspicion and impress those around with his innocence. All these and other circumstances are to be considered. But the fact that he was charged and made no reply or denial, may properly be shown, the effect thereof being left to the jury. Wharton, 345, note 6; 1 Greenl. Ev., § 215; *State* v. *Perkins*, 3 Hawks, 377; 10 Georgia, 511.

The third instruction given at the request of the State (the exception to which raises the last question meriting

6. CRIMINAL LAW: case followed.

our attention) is, in substance, the same as the one discussed in the fourth division of the opinion in the case of *The State* v. *Collins*, *ante*. The law as thus stated, was held to have a dangerous tendency, being calculated without explanation to mislead the jury. It was however, expressly announced in that case, that the giving of such instruction would not justify a reversal, if the guilt of the prisoner had been fully and undeniably established. And the reversal of that case was not based upon this misleading instruction, but upon other and more vital errors, as the opinion will most abundantly demonstrate. And in this case, where all of the instructions seem to have fairly presented the law; where the prisoner has apparently had a careful examination of his case upon its merits, and where the testimony, as he presents it in the bill of exceptions, prepared at his own instance, fully warranted the verdict, we cannot consistently, with our duty to look at the substantial rights of the parties, and order such judgment on the record as the law demands, do otherwise than refuse, for this error, to reverse the case. To grant a retrial under such circumstances, is not in our opinion, demanded by the law.

                                        Affirmed.